**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Thomas Supranovich, | Case No. 2:24-cv-00979-JAD-NJK |
| Plaintiff(s), | |
| v. | **Order** |
| | [Docket Nos. 35, 40] |
| Juan Julio, et al., | |
| Defendant(s). | |

Pending before the Court is Plaintiff's motion for sanctions. Docket No. 35.[1] Defendants filed a response. Docket No. 37. Plaintiff filed a reply. Docket No. 39. Also pending before the Court is an order to show cause. Docket No. 40. Defendants and their counsel filed a response. Docket No. 41. Plaintiff filed a reply. Docket No. 43. The Court held a hearing on April 24, 2026. Docket No. 44.[2] For the reasons discussed below, the Court **AWARDS** Plaintiff any costs he incurred and **SANCTIONS** the Attorney General's Office with a fine of $500. The Court otherwise **DENIES** the motion for sanctions and **DISCHARGES** the order to show cause.

**I.    Background**

The subject Deputy Attorney General has been appearing in prisoner civil rights cases for a relatively short time.[3] During that timeframe, the Court has raised serious concerns. *See, e.g.*, *Coil v. Warden Brian Williams, et al.*, Case No. 2:24-cv-00017-RFB-NJK, Docket No. 38  (D. Nev. Oct. 21, 2025) (addressing failure of four out of five defendants to respond in timely fashion to the complaint); *Hines v. Dzurenda*, Case No. 2:24-cv-00060-JAD-NJK, Docket No. 36 (D. Nev.

---

[1] The Court liberally construes the filings of *pro se* litigants, particularly those who are prisoners bringing civil rights claims. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013).

[2] A transcript has not been prepared, so the Court cites herein to the audio recording.

[3] According to bar records, the subject Deputy Attorney General has been practicing law for less than two years. *See White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010) (courts may take judicial notice of bar records). The Court will refer to him herein generically as "the subject Deputy Attorney General." *Cf. in re Girardi*, 611 F.3d 1027, 1039 (9th Cir. 2010).

1

Sept. 8, 2025) (noting frivolous nature of counsel's filing and warning of potential Rule 11 sanctions in the future).

Most pertinent for today's circumstances was counsel's failure to recognize a discovery deadline in a prior case to which he had been assigned. The *pro se* prisoner plaintiff in that case had served written discovery on May 19, 2025. *See Hines*, Docket No. 25 at 3. That plaintiff and the prior defense counsel had agreed to extend the deadlines for Defendants to respond to the written discovery and memorialized that agreement in a stipulation to modify case management deadlines, *see id.* at 3-4, which was granted, *Hines*, Docket No. 26. The subject Deputy Attorney General then assumed responsibility for that case and entered a notice of appearance at which time he became the lead—and sole—counsel of record. Docket No. 31. The subject Deputy Attorney General failed to respond to the outstanding discovery in timely fashion, leading the *pro se* prisoner plaintiff to file a motion for sanctions. *See Hines*, Docket No. 39. In response, the subject Deputy Attorney General acknowledged the missed deadlines, while indicating that he had believed there was no outstanding discovery when he entered the case and that the discovery violation was inadvertent. *Hines*, Docket No. 41 at 2. The subject Deputy Attorney General further declared that he "received no notice that there was outstanding discovery in the case, nor was there any due date on [his] calendar for outstanding discovery." Docket No. 40-1 at ¶ 6.

Such attestations are quite plainly insufficient. When pressed at the hearing as to his efforts upon assuming responsibility for the case, the subject Deputy Attorney General represented that he had not reviewed the docket or the case file upon taking over as the one and only attorney assigned to the case. *See Hines*, Hearing Rec. (Dec. 18, 2025) at 10:15 a.m. The exchanges during that hearing include the following:

> Court: [Checking the docket] is basic competence right there. You, in your response to the motion, say that no one put it in your calendar. You are relying on someone to put in your calendar when discovery is due?
>
> Subject Deputy Attorney General: I apologize for that your Honor. . . . I should have looked through the docket. It's not an excuse, but [it] was just to show that I was not aware at all of this discovery. Since I became aware, I took steps to immediately remedy it.

2

> Court: . . . As an attorney, you are required to do certain things. One of them is looking at the docket and the case file, and determining when discovery is due. This plaintiff, Mr. Hines, served discovery in May, agreed to a July extension, and you came in in July and never looked at the deadlines.
>
> Subject Deputy Attorney General: Yes, your Honor, it was a mistake on my part. I have taken steps to ensure that it won't happen again and to manage my cases. I have been in practice for under a year, so I am still trying to get a hold of it. It is not an excuse. . . . I will make sure it does not happen again, your Honor.
>
> Court: I understand that you had just come in, but whether or not you have been practicing for a day or 20 years, it's basic that you check a file and you check the docket. I just don't understand how that got passed you in this case.
>
> Subject Deputy Attorney General: Yes, your Honor. I relied on the case notes from the previous attorney. I should not have. I should have thoroughly reviewed the docket.

*Id.* at 10:16 - 10:17 a.m. In resolving the motion for sanctions in that case, the Court made clear that it "absolutely agrees with Plaintiff that the record shows carelessness and conduct well below the professional expectations of counsel." *Id.* at 10:34 - 10:35 a.m. Ultimately, the Court cautioned "defense counsel that he must do better in the future. This isn't the first time . . . and the Court expects significantly better conduct than this." *Id.* at 10:35 a.m.

In short, as of December 18, 2025, the subject Deputy Attorney General was plainly aware that entering a case requires careful review of the docket and case file, reliance on internal transfer notes or calendars is insufficient, and failing to comply with his basic responsibilities can lead to adverse consequences. The subject Deputy Attorney General expressed his understanding of those requirements and vowed that he would ensure similar violations would not happen again.

This is also a prisoner civil rights case. On December 19, 2025, Plaintiff filed a motion to compel. Docket No. 27. Through their counsel Nathan Claus, Defendants opposed that motion by raising a single argument that the discovery was not relevant. Docket No. 29. On January 22, 2026, the Court determined that the information fell within the broad scope of relevance, granted the motion to compel, and ordered Defendants to provide the subject discovery to Plaintiff by February 12, 2026. Docket No. 33.

In "late January," Claus left the office. *See* Docket No. 37 at 2-3. The case was reassigned to Cecelia Blue, but she provided her notice that she too was leaving the office. *See id.* The case

was reassigned to the subject Deputy Attorney General and he filed a notice of appearance on February 3, 2026.  Docket No. 34.  The most cursory review of the docket would have revealed that the Court had just granted Plaintiff's motion to compel and ordered Defendants to produce documents by February 12, 2026.  *See* Docket No. 33 (docket text that "Defendants must provide the subject discovery to Plaintiff by February 12, 2026").

The subject Deputy Attorney General violated that order.  Parroting the attestations that were rejected just a few weeks earlier, the subject Deputy Attorney General attests that he was "not informed of the current discovery obligations" when he took over the case.  Docket No. 37-1 at ¶ 3.  Although his declaration gives the impression that the subject Deputy Attorney General reviewed the case file and had believed (mistakenly) that the discovery had been provided, *see, e.g.*, *id.* at ¶¶ 3-4, he clarified at the hearing that in reality he did <u>nothing</u> on this case upon filing a notice of appearance, including not looking at the case file or the docket before the deadline of February 12, 2026, Hearing Rec. (4/24/2026) at 3:11 – 3:17 p.m.[4,5]  The subject Deputy Attorney

---

[4] The subject Deputy Attorney General's declaration certainly gives the impression that, upon filing his notice of appearance, he had promptly reviewed the case file and did not take action as to the subject deadline based on a misperception that attorney Blue had already complied.  *See* Docket No. 37-1 at ¶¶ 3-4 ("I took over the case in February and was not informed of the current discovery obligations due to two other DAGS involved in the case leaving the office at the same time.  From reviewing emails in the case[,] I discovered that DAG Nathan Claus had informed DAG Cecelia Blue about the discovery deadline, and DAG Blue responded that she would ensure the discovery was produced.  I also saw that parties had produced a supplemental disclosure in January and did not realize that we still had documents that we needed to produce").  In addition to the issues discussed below, <u>the subject Deputy Attorney General is also reminded that he owes a duty of candor to the Court</u>.

[5] Both the representations in this case and in many others, reflect significant difficulty in the Attorney General's Office retaining lawyers and a frequent reshuffling of cases to the lawyers that remain.  In this case, the subject Deputy Attorney General attests that he had been reassigned 25 new cases during the pertinent timeframe, all of which are in active litigation and many of which had imminent deadlines.  Docket No. 41-2 at ¶ 6.  Although some departing attorneys have prepared detailed transition information for his cases, others apparently have not.  *See, e.g.*, Docket No. 41 at 3.  As explained by a different Deputy Attorney General in a different case, the remaining attorneys are left to "triage" the new cases they have inherited.  *See Yates v. Cabrera*, Case No. 2:23-cv-02008-CDS-NJK, Docket No. 83 at 2 (D. Nev. Apr. 6, 2026).

At the hearing on this matter, a supervisor also explained that new deputy attorneys general are meant to be trained on discovery basics, including how to produce documents and the record of that production that should be maintained for future reference.  *See, e.g.*, Hearing Rec. (4/24/2026) at 3:10 – 3:11 p.m.  The supervisor hedged his statements by indicating how the discovery process and training are *supposed* to work, without attesting whether those processes were followed here.  *See, e.g., id.* at 3:10 – 3:11 p.m., 3:17 – 3:20 p.m.

General's violation of the Court's order led to the motion for sanctions and order to show cause that are currently before the Court.  Docket Nos. 35, 40.

**II.    STANDARDS**

It is a foundational aspect of federal litigation that orders are not suggestions or recommendations, but rather they are directives with which compliance is mandatory.  *Chapman v. Pacific Tel. & Tel. Co.*, 613 F.2d 193, 197 (9th Cir. 1979).  Quite plainly, "all orders and judgments of courts must be complied with promptly," *Maness v. Meyers*, 419 U.S. 449, 458 (1975).  The repercussions for violating a discovery order in particular are established in Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure.  The text of that rule provides as follows:

> (A) *For Not Obeying a Discovery Order.*  If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

"The very purpose of Rule 37 is to ensure compliance with discovery orders." *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240-41 (9th Cir. 1991) (cleaned up).  "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'"  *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763-64 (1980) (quoting

*National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643 (1976)). "Without adequate sanctions, the procedure for discovery would be ineffectual." *Grimes*, 951 F.2d at 241. Because discovery scenarios will vary in each case,

> Rule 37 is flexible. The court is directed to make such orders as are 'just' and is not limited in any case of disregard of the discovery rules or court orders under them to a stereotyped response. The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural. The district court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even.

8B C. Wright, A. Miller, R. Marcus, FEDERAL PRACTICE AND PROCEDURE: Civil § 2284 at 436-37 (2010 ed., 2026 supp.). Hence, Rule 37(b) "authorizes the district court to impose a wide range of sanctions if a party fails to comply with a discovery order." *United States v. Nat'l Med. Enterps., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986). Courts are afforded "great latitude" in assessing discovery sanctions. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985).

Rule 37(b) is structured to empower courts to issue "just orders" that are not limited to the specifically enumerated relief. The "clear import" of the Rule 37(b)'s broad language and structure is to "permit the imposition of a sanction in the form of a monetary fine which is paid to the court." *Pereira v. Narragansett Fishing Corp.*, 135 F.R.D. 24, 27 (D. Mass. 1991). Ample case law recognizes that court fines may be imposed pursuant to Rule 37(b) for violations of discovery orders. *See, e.g.*, *Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003), *overruled on other grounds*, *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 777-78 (7th Cir. 2016); *Erdman v. Victor*, 345 F.R.D. 60, 64-65 (S.D.N.Y. 2024); *United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 21, 26 (D.D.C. 2004), *recon. denied*, 2005 WL 8215332 (D.D.C. Mar. 25, 2005); *Winters v. Textron, Inc.*, 187 F.R.D. 518, 521 (M.D. Penn. 1999); *Miltope Corp. v. Hartford Cas. Ins. Co.*, 163 F.R.D. 191, 195 (S.D.N.Y. 1995); *Pereira*, 135 F.R.D. at 27; *J.M. Cleminshaw Co. v. City of Norwich,* 93 F.R.D. 338, 355, 358-360 (D.Conn.1981); *Allstate Indemn. Co. v. Lindquist*, No. C20-1508-JLR, 2022 WL 414171, at *3-4 (W.D. Wash. Feb. 9, 2022); *Smith v. Bradley Pizza, Inc.*, No. 0:17-cv-02032-ECT-KMM, 2019 WL 430851, at *8 (D. Minn. Feb. 4, 2019); *Jones v. Zimmer*, No. 2:12-cv-01578-JAD-NJK, 2014 WL 6772916, at *11 (D. Nev. Dec. 2, 2014); *United States ex rel. Johnson v. Golden Gate Nat. Sr. Care, LLC*, No. Civ. No. 08-1194 (DWF/JJK), 2013 WL

1182905, at * 7 (D. Min. Mar. 21, 2013); *Heflin Bus., Inc. v. Aviation Engine Serv., Inc.*, No. 12-20918-CIV/MOORE/ TORRES, 2012 WL 12864936, at *2 (S.D. Fla. Dec. 6, 2012); *Personal Audio, LLC v. Apple, Inc.*, No. 9:09-cv-111, 2011 WL 6148587, at *5 (E.D. Tex. June 16, 2011).[6] Both the structure of the rule and ample case law further make clear that the sanction of a court fine as a "just order" is separate and apart from the ability to hold a party in contempt. Stated differently, a court fine may be imposed without resorting to contempt proceedings. *See Pereira*, 135 F.R.D. at 27; *see also, e.g.*, *United States v. Shaffer Equip. Co.*, 158 F.R.D. 80, 87 (S.D.W.V. 1994).[7] Indeed, the Ninth Circuit has expressly rejected the contention that monetary fines under Rule 37(b) can only be imposed through the lens of contempt proceedings. *See Grimes*, 951 F.2d at 241 (recognizing "need for this flexibility" to enforce discovery orders).

---

[6] Rule 37(b)'s reference to "just orders" is mirrored in the rule governing violations of other pretrial orders. Fed. R. Civ. P. 16(f). Given the similarity in text, courts often consider caselaw from both the Rule 16(f) and Rule 37(b)(2)(A) contexts. *See, e.g.*, *Erdman*, 345 F.R.D. at 64-65 ("While a fine is not one of the sanctions listed in Rule 16 or Rule 37, case law makes clear that sanctions under Rule 16 may include a fine payable to the Clerk of the Court. Indeed, case law is replete with instances of fines imposed pursuant to Rule 16 or the related portion of Rule 37" (citations and quotations omitted)); *Pereira*, 135 F.R.D. at 27 ("The clear import of this language is that the phrase 'may make such orders as are just' as used in both Rules 16(f) and 37(b)(2), Fed.R.Civ.P., permit the imposition of a sanction in the form of a monetary fine which is paid to the court and not to an opposing party as reimbursement for costs and attorney's fees"). Although the Court focuses herein on case law specific to Rule 37(b) sanctions, it notes that courts and commentators routinely recognize that fines similarly may be assessed as a "just order[]" pursuant to Rule 16(f). *See Nick v. Morgan's Food, Inc.*, 270 F.3d 590, 595-96 (8th Cir. 2001); *see also, e.g.*, 8A C. Wright, A. Miller, M.K. Kane, Federal Practice and Procedure: Civil § 1531 at 435-36 & n.7 (2010 ed., 2026 supp.) (collecting cases).

On the other hand, the subject Deputy Attorney General relies largely on cases addressing inherent authority sanctions, Rule 37(a)(5)(A) awards of expenses, and other bases for sanctions not at issue herein. *See, e.g.*, Docket No. 41 at 11-12. In one of those cases, for example, the Court rejected the imposition of a judicial fine because the moving party cited Rule 37(a)(5), which authorizes an award of expenses, and Rule 37(d)(3), which authorizes the sanctions enumerated in Rule 37(b)(2)(A)(i)-(vii). *See Frontier Contr., Inc. v. Allen Eng'g Constr., Inc.*, No. 1:11-cv-01590-LJO-SAB, 2013 WL 663429, at *7 (E.D. Cal. Feb. 22, 2013). That decision does not analyze whether a "just order" for violating a discovery order may include a court fine, *see id.*, and the Attorney General's Office's efforts to apply *Frontier* expansively has already been rejected in this District, *see Gonzalez v. Baker*, No. 2:20-cv-01879-JCM-DJA, 2022 WL 2080089, at *1 n.1 (D. Nev. June 8, 2022).

[7] For this reason, the Court is not persuaded by defense counsel's reliance on case law arising in the contempt context, including the reference at the hearing to *Coleman v. Newsom*, 131 F.4th 948 (9th Cir. 2025).

## III.    ANALYSIS

The circumstances presented are straightforward. The Court ordered Defendants to produce discovery by February 12, 2026. Although the subject Deputy Attorney General appeared in this case well before that deadline, he did not look at the docket or the case file. The subject Deputy Attorney General failed to take these basic steps despite just a few weeks earlier acknowledging the need to do so and assuring the Court of future compliance. Having failed to come up to speed on this case, the subject Deputy Attorney General violated the Court's order to produce discovery. Despite these troubling circumstances, the Deputy Attorney General and the Attorney General's Office argue that no repercussions can result except maybe paying costs to the *pro se* prisoner plaintiff. *See, e.g.*, Hearing Rec. (4/24/2026) at 3:31 p.m.

The Court is not persuaded by these arguments. As a threshold matter, the record demonstrates egregious misconduct that was repeated despite a specific exchange in very similar circumstances just weeks earlier. The defense argues that a fine would amount to criminal contempt, which is not properly imposed in the circumstances. *See, e.g.*, Hearing Rec. (4/24/2026) at 3:28 - 3:32 p.m. Courts have rejected that very contention given the structure and language of Rule 37(b), which make plain that a fine "can be imposed without proceeding to a finding of contempt." *Pereira*, 135 F.R.D. at 27. It is worth reiterating that Rule 37(b) is meant to be "flexible" and its "very purpose . . . is to ensure compliance with discovery orders." *Grimes*, 951 F.2d at 240-41 (holding that contempt finding was not required for magistrate judge to impose prospective sanctions totaling $85,000). This case is a prime example of circumstances in which a court fine is warranted. The Attorney General's Office litigates hundreds of cases in this courthouse at any given time against prisoners proceeding without counsel. Its position is, in effect, that its attorneys are insulated from any meaningful repercussion for violating the Court's orders in such cases so long as their violation is not "intentional" and so long as they eventually comply, no matter how egregious the carelessness and no matter how belated the compliance. *See, e.g.*, Docket No. 41 at 9-11 (arguing that civil contempt is unavailable); *id.* at 11-13 (arguing that "punitive" sanctions cannot be imposed); *id.* at 14 n.4 (arguing that attorneys' fees cannot be awarded); *id.* at 14-15 (arguing that costs should not be awarded or, if they are awarded, must be

8

limited to the "verified" costs that the *pro se* prisoner plaintiff can evidence); Docket No. 37 at 5-7 (arguing that non-monetary Rule 37(b) sanctions cannot be imposed).  In light of the flexible language in Rule 37(b), the Court declines to adopt this startling proposition.

Given the egregious violation and the need for deterrence, a fine payable to the court is appropriately imposed.  The Court issued a clear order requiring the production of discovery by Plaintiff by February 12, 2026.  The subject Deputy Attorney General filed a notice of appearance on February 3, 2026, but failed to engage in the most basic tasks of looking at the docket or reviewing the case file.  Adding insult to injury, the Court addressed similar shortcomings just a few weeks earlier with this same Deputy Attorney General and a supervisor, at which time the Court was assured that counsel would "make sure it does not happen again."  When it did in fact happen again shortly thereafter, the subject Deputy Attorney General had no real answers as to why he did not look at the docket or the case file upon entering this case.  He fell back on his "inadvertence," his expression of apologies, and reference to his large and increasing caseload.  These are insufficient excuses for violating an order:

> Compliance with court orders is not optional and must be prioritized above competing demands and resources. Even in the face of significant workload pressures, counsel has an obligation to ensure that court directives are timely and fully observed.  To the extent counsel must "triage" competing obligations, adherence to court orders is a non-delegable duty, and must be treated as the highest priority. A pattern of unchecked and unaddressed mistakes in complying with court orders will be viewed as a deliberate and strategic choice.

*Y.T. v. Warden of the Cal. City Corr. Cntr.*, No. 2:26-cv-00900-TLN-AC, 2026 WL 1192547, at *1 (E.D. Cal. May 1, 2026).  Stated differently, "the attorney handling a particular case has an obligation to exercise due care and reasonable professional diligence in that particular case" regardless of how many other cases that attorney may be handling.  *Carisbrook Asset Holding Tr. v. SFR Invs. Pool 1, LLC*, No. 3:17-cv-00370-MMD-WGC, 2019 WL 2393614, at *3 n.2 (D. Nev. June 6, 2019).

The continued failure of counsel to engage in the most basic steps to represent clients is inexcusable.  If Plaintiff incurred any costs as a result, he is entitled to recover those costs.  In addition, counsel's violation disrupted the Court's management of its docket, wasted judicial

resources, and warrants the imposition of sanctions. Separate and apart from Plaintiff's costs, the Court finds a $500 fine properly imposed to deter misconduct in the future. Although the subject Deputy Attorney General is cautioned that he may be sanctioned personally in the future, the Court will impose this sanction on the Attorney General's Office as it has requested. *See* Hearing Rec. (4/24/2026) at 3:36 p.m.; *see also Y.T.*, 2026 WL 1192547, at *1. Both the subject Deputy Attorney General and the Attorney General's Office are warned that future violations will likely result in stiffer sanctions. *See, e.g., Garcia v. GEICO Cas. Co.*, No. 2:13-cv-00731-JCM-NJK, 2014 WL 7474773, at *3-4 (D. Nev. Jan. 6, 2014) (imposing fines under Rule 16(f) and quintupling the amounts from fines imposed in an earlier case for a similar violation).[8]

## IV.  CONCLUSION

For the reasons discussed below, Plaintiff's motion for sanctions is **GRANTED** in part in that Plaintiff may recover costs from the Attorney General's Office if he incurred any. Plaintiff must confer with the subject Deputy Attorney General to determine the amount of those costs. If the parties cannot agree on costs, Plaintiff may file a motion to calculate costs. As to the order to show cause, the Attorney General's Office must pay a court fine of $500. Payment of the $500 shall be made no later than May 20, 2026, as a fine payable to the "Clerk, U.S. District Court." The subject Deputy Attorney General must file proof of payment by May 21, 2026. The order to show cause is otherwise **DISCHARGED**.

IT IS SO ORDERED.

Dated: May 6, 2026

_____
Nancy J. Koppe
United States Magistrate Judge

---

[8] There has been some discussion as to whether all responsive documents have now been provided, *see, e.g.*, Docket Nos. 39, 43, though it appears that at least the "bulk" of the documents were provided, *see, e.g.*, Hearing Tr. (4/24/2026) at 3:37 – 3:38 p.m. Moreover, the subject Deputy Attorney General represented that all responsive documents in Defendants' possession, custody, or control have been produced. *See id.* at 3:43 p.m. If there remains a dispute as to the completeness of the production, the parties must confer on that issue. Based on the current record, the Court declines to impose the non-monetary sanctions identified in Plaintiff's motion (i.e., deeming certain facts admitted or precluding Defendants from opposing certain facts).